Lee, J.
The interest granted to Mrs. Deshazor in the negroes Nelly Eachel and Jenny by her father’s deed being for her life only, of course whatever right Johm Deshazor acquired in them terminated upon her death, and accordingly Eachel and Jenny were surrendered to her father, the other, Nelly, having died some time previously. And as the appellees admit that as to two-thirds of the increase born after the death of John Deshazor they have lost their right by lapse of time and as those born previously have been heretofore divided, the only subject of controversy here is the undivided third part of the increase of the *189 three slaves named born after the death of John Deshazor, the whole having been held by Mrs. Deshazor during her life.
That the deed from Taylor conveying to his daughter Mrs. Deshazor the future increase of the three, slaves was effectual to pass such increase cannot be successfully questioned. True, it may be said that as they were not in existence, property in them could not be in the grantor and non det qui non habet. Still being the absolute owner of the reversion of these slaves after the determination of the life estate granted to his daughter, their capabilities of increase also belonged to him and he might grant such increase just as well as the principal subject. Thus it is said a man may grant the wool of a flock of sheep for years. Roy’s Max. S3. And it is common to grant the future rents and profits of real estate. The grant of the future increase of a female slave would of course confer but a contingent and uncertain interest: but as the children were born they would vest in the donee and the title become complete. It has even been held that the owner of a female slave may give her to one child and her future increase to another. Banks' adm'r v. Marksberry, 3 Littell’s R. 275. In one case decided in the old General court in 1736, a bequest of the future increase of slaves to others than those to whom the slaves were given, was held to be void. Stone's adm'r v. Pope, Jeff. R. 43. In a subsequent case decided by Chancellor Wythe in 1791, such a bequest was sustained. Dandridge v. Lyon, Wythe’s R. 123. The last case would I apprehend furnish the rule at this day. That the increase of the slaves during Mrs. Deshazor’s life estate would belong to her father (but for his grant) may be regarded as settled by the authorities. Ellison v. Woody, 6 Munf. 368; Maria v. Surbaugh, 2 Rand. 228.
In the deed to Mrs. Deshazor, no trustee was named *190 tojntercept the marital rights of her husband, nor was ^'Ie deed even expressed to be for her special qv sole separate use. So that the property in the slaves born during the lifetime of John Deshazor vested in him. But as to those born after his death a different question is presented.
Marriage is said to be an absolute gift to the husband of the goods and personal chattels of which the wife was actually and beneficially possessed in her own right at the time of the marriage and of such others as come to her during the coverture. Coke Litt. 300 a, 351 b; 2 Bac. Abr. “ Baron and Feme,” C. 3, p. 21. But of property coming under the description of choses in action, such as debts due the wife, legacies, residuary personal estate, money invested in public securities and the like, marriage is only a qualified gift upon condition that the husband get possession during its continuance; for if he die before the wife without having gained such possession, she and not his personal representative will be entitled. Coke Litt. 351; Scawen v. Blunt, 7 Ves. R. 294; Langham v. Nenny, 3 Ves. R. 467 ; Legg v. Legg, 8 Mass. R. 99. In 2 Black. Comm. 433, the doctrine is stated in general terms that “in chattel interests the sole and absolute property vests in the husband to be disposed of at his pleasure if he chooses to take possession of them: for'unless he reduces them to possession by exercising some act of ownership upon them, no property vests in him but they shall remain to the wife or her representatives after the coverture is determined.” This learned and accurate writer makes no discrimination in this regard between personal chattels and choses in action: as to both the reductio in possessionem is required to vest the property in the husband. And Judge Tucker tells us that chattels personal and choses in action “are all upon the same footing, whether they be debts bonds or *191 contracts (which are properly called choses in action) or slaves, horses or other cattle or goods, all of which come under the general denomination of chattels. For unless reduced by the husband into possession at some time during the coverture they will survive to .„ . , the wife it she survives.” 1 Tuck. Comm. Lib. 2, ch. 24, p. 329. Thus if the property of the wife be a bond or a slave or horse of which another person has possession adverse to the wife the husband must sue for and recover the money or property in the wife’s lifetime or the property will not be his. Ibid. The learned commentator would seem to restrict the necessity of a reduction to possession to the cases in which the possession was held by a third person adversely. But the doctrine is carried further for it is held to apply strictly in cases in which the possession is not adverse to the wife but perfectly consistent with her title, but in which the husband did not, because from the nature of the case, he could not, recover the possession during his life. Thus where a wife is entitled to slaves in remainder or reversion expectant upon a previous life estate and the husband die before the termination of the life estate, the wife him surviving, she, and not the estate of the husband, is entitled to the property; and any disposition of it by his will, will be ineffectual. Upshaw v. Upshaw, 2 Hen. & Munf. 381. So where there was a deed of gift of slaves from a father to his daughter, the use and possession of which was reserved to the father during life : the daughter married and the father after-wards died, and then the husband died without taking actual possession: held that the right to the slaves survived to the wife. Bohn v. Headly, 7 Harris & John. 257. Where the husband survives the wife but both die during the life estate, the right passes to the wife’s administrator. Neale's adm'r v. Haddock, Cam. & Norw. R. 75.
*192 may have assigned As to reversionary interests in personal property of a wife expectant on a previous life estate in another, if the tenant for life and the wife both outlive the husband, it is the settled rule that the wife takes the property by survivorship even although the husband it during his life to another. Hornsby v. Lee, 2 Madd. R. 16; Purdew v. Jackson, 1 Russ. R. 1; Honner v. Morton, 3 Russ. R. 65, 3 Cond. Eng. Ch. R. 298; Browning v. Headly, 2 Rob. R. 340. In these cases the husband could not reduce the property to possession because of the life estate and his assignment of the reversionary interest was not deemed to be equivalent; and so upon his death, the wife took the property. But a similar rule would seem to have prevailed in certain cases in which the chose might have been immediately reduced into possession but from neglect or other causes had been left outstanding by the assignee. Elwin v. Williams, 13 Sim. R. 309, 36 Eng. Ch. R. 308; Ashby v. Ashby, 1 Coll. R. 553, 28 Eng. Ch. R. 549. See also Hutchings v. Smith, 9 Sim. R. 137, 16 Eng. Ch. R. 138; 1 Bright on Husb. & Wife 86. And even where possession did come to the husband but not clearly and distinctly in his character of husband, such possessipn was held not to defeat the wife’s right of survivorship. Thus in a well considered case in which a father by his will gave slaves to his married daughter and appointed her husband executor who qualified as such: the husband afterwards died before any division of the estate of the father was made, having by his will bequeathed the slaves to his daughter and sons: held that his possession was to be considered as in his character of executor and not that of husband, and that the right to the slaves survived to the wife. Wallace v. Taliaferro, 2 Call 447. So where a widow entitled to an interest in the slaves of her deceased husband marries a second time and a suit is brought by her *193 second husband and herself for a division of the slaves which is made by commissioners appointed by the court, but their report was never returned nor therefore confirmed: the slaves remain on the plantation in possession of husband and wife and in this state of things the husband dies : held (though by a divided court) that the husband acquired no right to the slaves. Gregory's adm’r v. Mark's adm’r, 1 Rand. 355. Thus it appears the law favors the wife’s right of survivorship and is not disposed to surrender it unless the husband shall take possession, nor will it permit a doubtful or constructive possession to defeat it. For where there is a possession in the husband which may be referred to his character of executor or to that of husband, it will, as we have seen, to protect the wife’s right rather refer it to the former than the latter. And so where the possession might have been as trustee or as executor and trustee. Wall v. Tomlinson, Ves. R. 413; Baker v. Hall, 12 Ves. R. 496. See also Smith v. Scudder, 11 Serg. & Rawle 325 ; Blakey v. Newby’s adm'r, 6 Munf. 64.
Now in the present case the interest of the wife is not a reversion expectant upon a life estate but it is a future interest far more uncertain and contingent. It is a right to slaves thereafter to be born and which only came in esse after the death of her husband. It was therefore a subject which from its character was not susceptible of any thing in the nature of a possession by John Deshazor in his lifetime nor did he assign it or exercise ownership or do any other act in regard to it which by the most liberal construction could be regarded as a substitute for or as equivalent to a reduction into possession. Every reason which would save to the wife her right of survivorship in the case of a reversionary interest would seem to apply in full or stronger force: and I am therefore of opinion that the increase of the three slaves named born after the *194 death of John Deshazor did not belong to his estate were property of Mrs. Deshazor, and that the appellees can maintain no claim to them whatever.
But if this were otherwise, there is another ground uPon as ^ seems to me, the appellees must fail. Their bill filed in 1843 sets up this identical claim to the increase of the three women born after the death of John Deshazor which of course included the reversion of the third after the death of Mrs. Deshazor and prayed distribution to be made between them and Mrs. Deshazor (upon the concession that she was entitled to a life estate in a third) and an account of hires and profits. Mrs. Deshazor in her answer pleads the statute of limitations and relies upon.the decree of partition of the County court in 1826 as a bar to the claim. But she also directly denies the right of the appellees to any of the slaves born after the death of John Deshazor and insists that they were her property and not the property of his estate. Upon these issues the case was heard in 1845 and a decree pronounced in general terms dismissing the bill with costs. No grounds are specified as those on which the decree was based nor is there any reservation of the right to sue at a future period for the third conceded to be properly held by Mrs. Deshazor for her life: and in the absence of any specification of the grounds on which it was based and of such a reservation, the decree must be taken to rest upon ea.ch and all of the issues presented by the pleadings and must be regarded as a final adjudication of the entire right, as well that to the two-thirds then claimed as to the remaining third now sought to be recovered.
I am of opinion to reverse the decree and dismiss the bill.
The other judges concurred in the opinion of Lee, J.
Decree reversed.