E. N. FOSTER, PLAINTIFF IN ERROR, v. PIERCE COUNTY, DEFENDANT IN ERROR.

1.  **Taxes:** VOLUNTARY PAYMENT. Money paid as taxes voluntarily, and without protest, cannot be recovered back as matter of account against the county.

2.  ————: PUBLIC LANDS: PAYMENT: RECOVERY BACK. Money paid as taxes or redemption money on lands, the entry of which has been suspended by the land department of the general government on account of the failure of the local land officers to account for the entrance money to the United States accounting officers, cannot be recovered back from the county pending such suspension. Whether it can after such entry is finally canceled, if that may be, not decided.

ERROR to the district court for Pierce county. Heard below before BARNES, J.

*James H. Brown* and *Thurston & Hall,* for plaintiff in error.

*F. P. Wigton,* for defendant in error.

COBB J.,

The account of the plaintiff against Pierce county, made out in fair mercantile form, and verified by his attorney, claiming $435.87 as due from the said county to the plaintiff, was presented to the county board, by which it was duly examined, considered, and rejected. The plaintiff took an appeal to the district court, where the cause was dismissed, on motion of the defendant, "for the reason that the claim does not show a demand which the defendants were authorized to act upon." And the plaintiff brings the cause to this court on error. The errors assigned are, the sustaining by the district court of the motion to dismiss the cause for the reasons stated, and the entry of a judgment of dismissal and for costs against the plaintiff.

The district court, as well as counsel in that court and in this, treat the said account as a petition, and the motion as presenting the question whether the said account stated facts sufficient to constitute a cause of action against the defendant. The account consists of fifteen items; one is "To tax 1873, redemption from sale as per cert." Seven are for the specific amounts of taxes paid each year from 1874 to 1880, both inclusive; and the other seven consist of items of interest at ten per cent on each payment of taxes to the date of the presentation of the account.

At the foot of the account is the following statement: "The above taxes were paid by E. N. Foster on the south one-half north-west quarter, 32, 25, 2, which land belongs to United States, as shown by accompanying certificate." Then, after the verification of the account, follows a letter signed by the register of the United States land office at Norfolk, in which, after giving the description of the land as above, he adds: "I hereby certify that the records of this office show that the said tracts are vacant, the United States, not having received legal compensation therefor, has never parted with a taxable title to the same."

The above, together with copies of the tax receipts and certificate of redemption, constitute the whole case as it stood, as well in the district court as before the county commissioners, so that so far as the record shows the redemption of the lands in question from the sale for the taxes of 1873, and the payment of the taxes thereon for the seven years following, was entirely voluntary on the part of the plaintiff. There is no suggestion that these lands were assessed as the property of the plaintiff or that he ever claimed or occupied them, nor is it even suggested that these taxes were paid by mistake or misinformation or error of any kind.

An examination of the record fails to develop any ground or theory upon which the plaintiff has made a case against the county which, in any possible view, would entitle him

to recover. Money paid by mistake of fact, may, in some cases, be recovered back in an action at law, but in all such cases the mistake must be pleaded and proved. The statute makes ample provision for the reclamation of money paid under protest for the discharge of illegal taxes; but I know of no exception to the rule that money voluntarily paid cannot be recovered back at law.

If we go outside of the record and look into plaintiff's brief, we learn that in February, 1872, one George D. Hitzell made application to enter the lands in question, "they then being subject to entry, and duly paid the fees and received the certificate of entry in due form from the proper officer. This land, thereafter, by various conveyances, became the property of the plaintiff in error, who, as such owner, paid the taxes assessed against said land for the years 1873, etc." That "after such payments, and during the year 1881, the plaintiff in error discovered that owing to a fraud on the part of the officers of the government, the fees had never been paid to the authorities at Washington, and that the title still remains in the United States," etc. There is no proof whatever of this state of facts, and it can scarcely be possible that they exist as stated. The title to land once the property of the United States does not necessarily depend upon the fact of fees or entrance money being paid to the authorities at Washington. And if the statement that the lands were subject to entry, that Hetzel made application to enter them and did enter them in due form of law, paid the entrance money and fees, and received the certificate of entry in due form *from the proper officer*, be true, it is not to be believed that the government of the United States will finally refuse to issue a patent to him accordingly. When a party pays money to a receiving officer of the government, and receives a proper voucher therefor, he is not an insurer that such money will finally reach the treasury of the United States, and I have never heard of an instance where such party has been denied the

benefit of such payment because of the defalcation of such officer. Nor will it be in this instance. For prudential reasons of administration the recognition of such payment may be delayed for an apparently unreasonable length of time, but if really made in good faith and free from collusion with the derelict officer receiving it, it will finally be made. When such recognition is made it will not be of a title emanating from the United States at that time and founded on such recognition, but of one which passed out of the United States by virtue of the entry when made, and deriving its vitality from such entry and payment.

It is not deemed necessary to discuss the question of the taxability of lands after entry and before the issuance of the patent. I believe that it is now universally conceded that such taxation is not an interference on the part of the state with the federal government in the primary disposal of the soil, and it was held by this court in the case of *Bellinger v. White*, 5 Neb., 399, that "a homestead is liable to taxation as soon as the owner has the right to make his final proof and complete his title." It necessarily follows that it would remain taxable after proof and full payment made, although the patent might never be issued.

It will thus be seen, whether we try this case by the record or by the facts as stated in plaintiff's brief, that the judgment cannot be disturbed.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

ALL of the judges concurred.