DANIEL CARROLL ET AL., PLAINTIFFS IN ERROR, V. MATTHEWSON T. PATRICK, DEFENDANT IN ERROR.

1. Ejectment: DISMISSAL OF ACTION: ADVERSE POSSESSION. In November, 1861, certain half breed scrip was located in the name of Sophia Felix, upon land within the corporate limits of the city of Omaha, and a deed, under a power of attorney, made to one P. In December, 1861, one C. settled upon said land as a pre-emption claim, and in January, 1862, entered the same under the pre-emption act of 1841. In March, 1863, C. died, and soon afterward the entry was canceled by the commissioner of the general land-office. The widow of C., and three minor children, continued to reside on the land until about the year

1872; but in 1869 said minors, by their guardian, brought an action in equity against P., setting up their claim of title to said land, and praying for a decree against P. and others, confirming said title of the plaintiffs, etc. P. answered, setting up his claim of title, and praying for affirmative relief. No reply was filed to a number of essential facts stated in the answer, and the cause was thereupon submitted to the court upon the pleadings. Whereupon the court adjudged that, "said action and the petition therein be and the same is dismissed out of this court with prejudice to any future action." *Held*, 1. That the judgment of dismissal was a complete bar to the prosecution of another action. 2. That a judgment against the plaintiffs interrupted the continuity of adverse possession.

2. Public Lands of United States: PRE-EMPTION: POWER OF TERRITORIAL LEGISLATURE. A territorial legislature cannot, by including lands within the limits of a municipality in excess of that allowed by the laws of the United States, prevent the entry of such lands under the pre-emption law of 1841.

3. ———: DUPLICATE RECEIPT OF RECEIVER AS EVIDENCE OF TITLE: ADVERSE POSSESSION. Under section 411 of the code of civil procedure, the usual duplicate receipt of the receiver of any land-office, or if that be lost or destroyed or beyond the reach of the party, the certificate of such receiver that the books of his office show the sale of a tract of land to a certain individual, is proof of title equivalent to a patent against all but the holder of an actual patent, and is sufficient color of title under which a party may hold adverse possession.

4. ———: ———: STATUTE OF LIMITATIONS. Where a party entering land has complied with the law in all respects to entitle him to a patent therefor, he is the owner of such land, and until the patent issues the title is held by the United States merely as trustee for his use; and the statute of limitations will run against the party entering the land, or his grantee, in favor of one holding adversely, from the date of such entry.

ERROR to the district court for Douglas county. Tried below before NEVILLE, J.

*Estabrook & Irvine, J. C. Cowin,* and *W. J. Connell,* for plaintiffs in error. Title acquired by adverse possession may be made basis of ejectment suit. *Horbach v. Miller,*

4 Neb., 31. *Pederick v. Searle*, 5 Serg. & R., 236.
*Ford v. Wilson*, 35 Miss., 490. Pre-emption within limits
of city. Byron Reed, 12 Hill's Leading Cases, 74.
*Lewis v. Seattle*, 2 Copp L. L., 1018. *Minter v. Cromelin*,
18 How., 87. *Root v. Shields*, 1 Woolw., 362. Statute
of limitations. *Chalfin v. Malone*, 9 B. Mon., 496.
See particularly *Larriviere v. Madegan*, 1 Dill., 455, pre-
cisely in point on the most vital issue in this case.

*John L. Webster* and *George W. Doane*, for defendant
in error. Title by adverse possession not tenable. *Oak-
smith v. Johnson*, 92 U. S., 343. *Burgess v. Gray*, 16
How., 48. *Gibson v. Chotteau*, 13 Wall., 92. Patent
conveyed title. *Gibson v. Chotteau*, 13 Wall., 102.
*Bagnell v. Broderick*, 13 Peters, 450. Land within cor-
porate limits not subject to pre-emption. *Root v. Shields*,
1 Woolw., 340. Res adjudicata. *Durant v. Essex*, 7
Wall., 109. *Foote v. Gibbs*, 1 Gray, 412.

MAXWELL, J.

This is an action of ejectment brought by the plaintiffs
against the defendant to recover the possession of certain
real estate in the city of Omaha, and for rents and profits.

The defendant, in his answer, denies that the plaintiffs
are the owners of the lands described in the petition, and
denies that they are entitled to the possession of the same.

For the second defense, the defendant alleges facts show-
ing a former adjudication.

For a third defense, the defendant alleges that the lands
in controversy were within the corporate limits of the city
of Omaha, and therefore not subject to pre-emption.

For a fourth defense, the defendant alleges that, during
the life-time of Mathew W. Carroll, the father of the
plaintiffs, and through whom they claim-title as heirs and
representatives, the defendant entered into possession of
said land, and has ever since and for a period of more than

ten years before the commencement of this action been
n the open, notorious, and adverse possession of said
premises.

On the trial the attorneys for the respective parties en-
tered into the following stipulation:  "It is hereby stipu-
lated and agreed by and between the parties hereto, that
the jury herein may be discharged and further considera-
tion of this case by a jury waived, and that the cause shall
be submitted to the court without a jury.   It is further
stipulated and agreed that Mathew Carroll, the father of
the plaintiffs herein, with his family, settled upon the land
in controversy about the 11th day of January, 1862, and
remained so in possession until the time of his death,
which occurred March 4, 1863, and that after his death
his widow, now Mary Gorman, together with the minor
children, being the plaintiffs herein, still remained in the
house which had been erected by Mathew Carroll upon
the said land, and so remained until the 11th day of
April, 1872.   It is further stipulated and agreed that all
the evidence introduced upon the trial, which the court
shall deem proper and legitimate evidence, shall be con-
sidered by the court in finding any other fact or facts nec-
essary to be considered by the court in determining this
case."

The court, after hearing the evidence, rendered the fol-
lowing judgment: "This cause having come on for a
second trial in ejectment, and a jury having been with-
drawn by a stipulation of the parties at the previous term
of this court, this cause was submitted to the court, and
this court, after hearing the evidence and arguments of
counsel, and being fully advised in the premises, doth or-
der, adjudge, and determine that, at the time of the com-
mencement of this suit, that the defendant was the owner
in fee and entitled to the possession of the lands in con-
troversy, to-wit: the north-half of the south-east quarter,
and the south-east quarter of the south-east quarter of sec-

tion nine, in township fifteen north, of range thirteen east
of the 6th principal meridian, in Douglas county, state of
Nebraska.   It is further ordered and adjudged, that the
defendant go hence without day, and that he do have and
recover of the plaintiffs herein his costs taxed at $———.
To which finding and judgment the plaintiffs except."

The testimony tends to show that the land in controversy
was entered in November, in the year 1861, with half
breed scrip, in the name of Sophia Felix; and that soon
afterwards a deed in her name was executed and delivered
to the defendant by her attorney in fact.   The testimony
also shows that on the 29th day of December, 1861,
Mathew W. Carroll, the father of the plaintiffs, settled
upon the land in controversy, and on the 31st of January,
1862, entered said land under the pre-emption law of 1841,
and received a certificate of such entry.   In March, 1863,
this entry was canceled by the general land-office, of which
the parties interested had due notice.   The certificate,
however, was filed for record in the office of the county
clerk of Douglas county on the 28th of October, 1863.
Mathew Carroll died in March, 1863, but his widow and
minor children continued to reside upon the land in con-
troversy until the time stated in the stipulation heretofore
set out.   In July, 1869, the plaintiffs filed a petition in
equity in the district court of Douglas county, as follows:

"That said plaintiffs, David Carroll, Thomas Carroll,
and Mathew Carroll, minors under the age of twenty-one
years, by their next friend, Patrick Gorman, complain of the
said defendants, Matthewson Patrick, Sophia Gamelle, and
David Gamelle, and as a cause of said complaint say:
That on or about the 29th day of December, A.D. 1861,
the north half of the south-east quarter and the south-
east quarter of the south-east quarter of section 9, in
township 15 north, of range 13 east of the 6th principal
meridian, in Douglas county and state of Nebraska, was
public land of the United States, and as such was subject

to entry and purchase by pre-emption under the laws of the United States, at the land-office in Omaha, and in the district in which the said land is situated; that, while the same was such public land, to-wit, on the day and year aforesaid, one Mathew W. Carroll, who was then and there a citizen of the United States, and the head of a family, and as such entitled to the benefits of the laws of the United States regulating the entry and purchase of such lands by pre-emption, duly entered upon and commenced improvements upon said land, under and in pursuance of said laws of the United States, and that thereafterwards, to-wit, on or about the 31st day of January, A.D. 1862, proved to the satisfaction of the register and receiver at said land-office, his said settlement, and then and there duly entered and purchased the same by pre-emption, from the government of the United States, and paid to the proper officer of the government the full consideration and price of said land, and then and there received from said officer the usual and proper certificate of said purchase and pre-emption entry; and that thereafterwards, to-wit, on the 28th day of October, A.D. 1863, said certificate of said entry by pre-emption, as aforesaid, was duly recorded in the office of the register of deeds in and for said Douglas county, in book P of the records of deeds therein, at page 117; that on or about the 4th day of March, A.D. 1863, said Mathew W. Carroll died intestate, leaving surviving him these plaintiffs and his wife, Mary Carroll, the mother of these plaintiffs; that these plaintiffs are the only surviving and lawful heirs of the said Mathew Carroll, deceased, and as such are entitled to and hold said lands by inheritance from said Mathew W. Carroll, deceased, and now are and ever since have been in possession thereof; that said Mary Carroll has since intermarried with one Patrick Gorman, with whom these plaintiffs are now residing upon said land; that about the —— day of November, A.D. 1861, these plaintiffs are informed and believe, and so charge

the truth and aver, that the said defendant, Matthewson T. Patrick, caused a certificate, or a certain kind and denomination of scrip, issued by the United States to one Sophia Felix, an Indian half breed of the Sioux or Dakotah nation of Indians, to be located upon said land for his own personal benefits and use, but in the name of one Sophia Felix, to whom and in whose name said scrip was issued. But these plaintiffs aver that said scrip was not entered for the use and benefit of said Felix; that she never in fact, directly or indirectly, caused or requested said entry to be made, either by herself in person, nor by any one acting for her as her lawful agent, guardian, or attorney, for her use and benefit, but said entry was made by an unauthorized person, wholly without her knowledge or procurement, and for the sole use and purpose of obtaining the title to said land to the said defendant, Matthewson T. Patrick, and for no other purpose, and with no other design whatever.

"The said plaintiffs further aver that said entry so made or caused to be made by said Patrick in the name of said Felix, but for the use and benefit of said Patrick, as aforesaid, was unlawful and void, and a fraud upon the rights and against the interests of said Mathew W. Carroll in and to said land; that afterwards, to-wit, about the 3d day of July, A.D. 1863, letters patent were, through the procurement of said Patrick, and in fraud upon the rights of these plaintiffs, issued by the proper officers of the United States and delivered to said Patrick, but in the name of said Felix; that said Felix never lived upon said land, and never, in fact, had or claimed any real interest in said land whatever; that on or about the 25th day of July, A.D. 1863, said defendant, Patrick, pretended to have obtained a conveyance of said land from said Felix, by the name of Sophia Gamelle and David Gamelle, he, said Patrick, claiming that said Sophia Felix had, at some time since said date of said entry by her, intermarried

with the said David Gamelle; but aver that they are informed and believe that said Sophia is not the same person in whose name said entry was so made by said Patrick in the name of said Sophia Felix, but, on the contrary, that said David and Sophia Gamelle, if any such persons exist at all, wrongfully attempted to personate the said Sophia Felix, nor has the said Sophia Felix ever, in fact, conveyed said land to said defendant, Patrick, nor to any one else, as appears by the records of deeds in and for said Douglas county.

"These defendants further complain that, on the 22d day of February, 1868, the said defendant, Matthewson T. Patrick, commenced an action for the recovery of the possession of said land in this court against the said Patrick Gorman and Mary Gorman, his wife, with whom these plaintiffs now reside upon said land, and that in said action these plaintiffs are not made parties, and whose rights and interests cannot be fully determined in said action, and that said action is still pending in this court.

"These plaintiffs further aver that, whatever title in fee the said defendants now hold in said land, is held by said defendants in trust for the use and benefit of these plaintiffs. Wherefore said plaintiffs pray judgment of this court, and that whatever title or interest the said defendants may have in or to said land as aforesaid, may be adjudged and decreed by this court to be held by them in trust for the said plaintiffs; and that the said defendants holding said title in fee may be directed and required by an order of this court to make, execute, and deliver to said plaintiffs, such and all proper and necessary releases, acquittances, and conveyances of said land to said plaintiffs to vest in them whatever title they, the said defendants, or either of them, may have in or to said land; and for such further or other relief as the nature of the circumstances of this case may require, and to this court may seem just and proper."

The defendant, Patrick, thereupon filed an answer, and afterwards an amended answer, alleging fully the facts upon which his claim of title rests, the amended answer concluding as follows: "And these defendants, further answering, say that the said plaintiffs are in the possession of the said lands and premises, and refuse to surrender or deliver up the same to these defendants, or any of them, although thereunto often requested, and that under and by virtue of the alleged entry thereof by said Mathew W. Carroll, and of the certificate made by the aforesaid officers of the aforesaid land-office to the said Carroll, purporting to show the said entry, they have claimed and do claim possession thereof and title thereto. Wherefore these defendants do pray that the said plaintiffs be, by the judgment of this court, ordered, adjudged, and decreed to surrender and deliver up to these defendants the said premises; and in some proper manner, under the direction of this court, to release and convey said premises to the said defendants, or such one of them as the court shall find thereunto entitled, and that these defendants may have all such other and further relief as to this court shall seem just and equitable."

A reply, consisting of certain special denials, was filed by the plaintiffs in that case, to which it is unnecessary to refer.

The plaintiffs demurred to certain portions of the answer, and afterwards took leave to reply thereto. Having failed to file an additional reply, as required, the following judgment was rendered:

"The said plaintiffs having failed to. file an additional reply to the parts of amended answer by them heretofore demurred to, and by their counsel declaring in open court that they did not purpose to reply to said matter of said amended answer; thereupon said defendant moved the court for judgment upon the record, and therefore said plaintiffs applied to the court for leave to dismiss their suit.

without prejudice, and the court being fully advised in the premises, it is ordered, adjudged, and decreed that said plaintiffs do not have leave to dismiss their action without prejudice, to which ruling of the court the said plaintiffs except. And it is further ordered that the said action and the petition therein be and the same is dismissed out of this court with prejudice to any future action, and that the said defendant recover against said plaintiffs the costs of this action by said defendants expended, taxed at $———."

No appeal was taken from this decree, nor is any objection made to the authority of the guardian to bring the action. The decree, therefore, is in full force and effect at the present time. The question, therefore, arises as to the effect of the decree: Does it bar the plaintiffs from prosecuting another action? The plaintiffs' petition in that case contains a statement of all the facts upon which they relied to obtain the relief prayed for. The defendant, in his amended answer, set out at length the facts upon which his claim of title depended, and prayed for affirmative relief. To many of the essential facts thus pleaded by the defendant in his answer in that case, the plaintiffs failed to reply, apparently because they were unable truthfully to do so. The reason, however, is immaterial at the present time. The case was thus submitted on the pleadings to the court, and a decree dismissing the action thus became a judgment upon the merits. It was equivalent to a finding by the court that, upon the issues made by the pleadings, the plaintiffs were not entitled to the relief prayed for. That such a decree, unless reversed on appeal, is final, there is no doubt.

In *Perine v. Dunn*, 4 Johns. Ch., 142, it is said: "A bill regularly dismissed upon the merits, where the matter has been passed upon, and there is no direction that the dismission be without prejudice, may be pleaded in bar of a new bill for the same matter. This is the amount of the cases on the point. *Prettyman v. Prettyman*, 1 Vern.,

310.  *Peterborough v. Germaine*, 1 Bro. P. C., 281.
*Anon.*, 1 Ch. Cas., 155.  *Brandlyn v. Ord*, 1 Atk., 571.
*Cater v. Dewar*, Dickens, 654.   There may, indeed, ques-
ions arise on this subject, as, whether the decree of dis-
missal has been duly enrolled, or duly and finally rendered,
or whether it amounts to a *res judicata* upon the sub-
stance of the bill; but assuming these points of form and
criticism to be all properly settled, it would seem to be
within the reason of the rule, that a decree dismissing a
bill seeking to redeem because the plaintiff would not re-
deem when allowed and directed, should conclude the party
from a new bill to redeem.   Why should he be allowed
to *vex* the mortgagee again with a faithless proposition?"

In *Wilcox v. Balger*, 6 Ohio, 409, the effects of a judg-
ment of dismissal upon the merits is stated as follows:
" The complainant demurs to this plea, because it appears,
from the decree, that it was dismissed for non-payment of
the purchase money, and that the contract remains unaf-
fected by the decree.   We think the dismissal is a bar to
future proceedings.   The rights of the parties were before
the court, and all were investigated, and the plaintiff must
abide by the shape in which he chose to submit them.
Like a bill to redeem a mortgage, if it be dismissed with-
out reservation for non-payment of the money within the
time limited, it is a final decree, and works a foreclosure,
because it concludes all rights."   See also *Taylor v. Yar-
brough*, 13 Gratt., 183.   *Kelsey v. Murphy*, 26 Penn. St.,
78.   *Neafie v. Neafie*, 7 Johns. Ch., 1.   *Foote v. Gibbs*, 1
Gray, 412.   *Parrish v. Ferris*, 2 Black, U. S., 606.   *Du-
rant v. Essex Co.*, 7 Wall., 107.   In the latter case it is said,
p. 109: " The decree dismissing the bill in the former suit
in the circuit court of the United States, being absolute in
its terms, was an adjudication of the merits of the con-
troversy, and constitutes a bar to any further litigation of
the same subject between the same parties.   A decree of
that kind, unless made because of some defect in the plead-

ings, or for want of jurisdiction, or because the complainant has an adequate remedy at law, or upon some other ground, which does not go to the merits, is a final determination. Where words of qualification, such as ' without prejudice,' or other terms indicating a right or privilege to take further legal proceedings on the subject, do not accompany the decree, it is presumed to be rendered on the merits."

2. The effect of the decree against the plaintiffs was to terminate their interest, whatever it might be, in the land. Suppose the court had found that they held the title as trustees, and adjudged that the decree should operate as a conveyance of their interest to the defendant, this would interrupt the running of the statute of limitations and break the continuity of adverse possession. *Gower v. Quinlan*, 40 Mich., 572. In that case it is said : " Whatever may have been the true character of Mrs. Smith's possession between 1852 and 1855, the decree made in the latter year, which required her to convey to the administrator of her former husband, shifted her position and placed her in the same condition in regard to her possession as though she had then voluntarily made conveyance to the administrator. Her previous possession was of no avail any longer as a holding to help make out a continuous adverse possession. Her entire right was determined by the decree, and her possession thereafter, even when joined to that of her successors in the same right, appears to have been too short to give rise to a title under the mortgage founded on adverse possession."

By bringing suit, the plaintiffs recognized the title of the defendant, and sought to have it transferred to themselves, and, as adverse possession is placed upon the claim of ownership for at least ten years, a recognition of title in another during that period by the party in possession, and a decree against him, will break the continuity. See *Dunn v. Miller*, 75 Mo., 260. *Perkins v. Blood*, 36 Vt., 273.

3.   In 1868, the defendant brought an action of eject-ment against Gorman and wife, and recovered judgment, some time prior to 1872, and the possession of the premises in that year; and the plaintiffs have not been in possession from that time until the present.

4.   The defendant contends that the land in question, being within the limits of the city of Omaha, it was not subject to pre-emption under the laws of the United States. It appears that, in the year 1857, the territorial legislature passed an act giving the city of Omaha a special charter, and including within the boundaries of that city several sections of land, including that in controversy.   The limit-ation of the United States statutes, however, evidently refers to lands held as a town site under the laws of the United States, and not to acts passed by the territorial legis-lature.   If a territorial legislature had jurisdiction in a case of that kind, it would be possible to extend the charter of a city over the public domain of the territory, and thus vir-tually nullify the acts of congress and prevent the settle-ment of the territory.   It is evident, however, that the legislature had no jurisdiction, and that the land in question, so far as it appears, was subject to pre-emption.

5.   It is claimed on behalf of the defendant, that the statute of limitations would not begin to run until a patent had been issued by the United States.   As between the person entering the land and the government, the legal title remains in the United States until the patent is issued. In a number of cases, however, this court has held that, where a party settling upon land has done everything required of him to make his final proof and complete his title, that he thereby becomes the owner of the land.   *Bel-linger v. White*, 5 Neb., 399.   *Foster v. Pierce Co.*, 15 Neb., 51.   *Donovan v. Kloke*, 6 Neb., 126.   *Axtell v. Warden*, 7 Neb., 185.   *Lynam v. Anderson*, 9 Id., 379. This rule is recognized by the supreme court of the United States in *Carroll v. Safford*, 3 How., 460, cited by Mason,

C. J., in *Morton v. Green*, 2 Neb., 476: "When land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate, which could no more be canceled by the United States than a patent. An officer of the land-office is not competent to cancel or annul a certificate of entry or a patent. That is a judicial act, and requires the judgment of a court. Until a patent is issued, the purchaser has not the legal title; but having made his entry of the land, and paid for it, the government can no more dispose of the land to another person than if the patent had been issued. The final certificate obtained on the payment of the money is as binding on the government as the patent. No person can be deprived of life, liberty, or property, without due process of law." This no doubt is the correct view. The government holds the land until the patent issues, merely as trustee for the purchaser, but the purchaser is the real owner.

Section 411 of the code of civil procedure provides that, "The usual duplicate receipt of the receiver of any land-office, or, if that be lost or destroyed, or beyond the reach of the party, the certificate of such receiver, that the books of his office show the sale of a tract of land to a certain individual, is proof of title equivalent to a patent against all but the holder of an actual patent."

A land officer's certificate, therefore, under our statute, is color of title, and, as between individuals, the statute of limitation begins to run from the time the party entering the land did all that was required of him to perfect his purchase; but, as the plaintiffs were not in possession for ten years after the decree was rendered against them, their rights in the premises are barred. The judgment of the district court is clearly right, and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.