HARVEY B. HEADLEY v. VICTOR H. COFFMAN.

FILED OCTOBER 17, 1893.     No. 5009.

1. **Ejectment:** PRE-EMPTOR'S TITLE: CANCELLATION OF ENTRY AFTER ISSUANCE OF FINAL RECEIPT. The holder of a receiver's certificate cannot, after the entry upon which the paper was issued has been canceled, maintain an action of ejectment against a party claiming under the United States, for he has only an equitable title, and this notwithstanding section 411 of the Code of Civil Procedure, making such certificate proof of title equivalent to a patent against all but the holder of an actual patent. *Morton v. Green,* 2 Neb., 441, followed.

2. ———: ———: ———: REFUSAL OF GOVERNMENT TO ISSUE PATENT. In such case, the authority of the commissioner of the land office to cancel the entry is not material. The refusal of the government, whether rightful or wrongful, to convey the legal title to the entryman, prevents him from maintaining ejectment against one in possession under a subsequent entry.

ERROR from the district court of Custer county. Tried below before GASLIN, J.

The opinion contains a statement of the case.

*Harry E. O'Neill* and *Alpha Morgan,* for plaintiff in error :

Until the patent is issued the fee of the land remains in the United States. After payment of the purchase money by the entryman, and the receipt of it by the officers of the United States, the government may still decline, on various grounds, to perfect his title by the execution of a patent. Nothing but the patent passes the fee, and before its issue, the entryman has but a qualified and contingent estate in the lands. Ejectment cannot be maintained upon an equitable title. (*Bagnell v. Broderick,* 13 Pet. [U. S.], 436 * ; *Stringer v. Young,* 3 Pet. [U. S.], 320 * ; *Boardman v. Reed,* 6 Pet. [U. S.], 328 ; *Stoddard v. Chambers,* 2 How. [U. S.], 284 ; *Wilcox v. Jackson,* 13 Pet. [U. S.], 516 ; *Darcy v. McCarthy,* 12 Pac. Rep. [Kan.], 104 ; *Morton v. Green,* 2 Neb., 456 ; *Hooper v. Scheimer,* 23 How. [U. S.], 235 ; *Fenn v. Holme,* 21 How. [U. S.], 482 ; *Vantongeren v. Heffernan,* 38 N. W. Rep. [Dak.], 52 ; *American Mortgage Co. v. Hopper,* 56 Fed. Rep., 67 ; *United States v. Steenerson,* 50 Fed. Rep., 504 ; *Swigart v. Walker,* 30 Pac. Rep. [Kan.], 162 ; *Fernald v. Winch,* 31 Pac. Rep. [Kan.], 665 ; *Pierce v. Frace,* 26 Pac. Rep. [Wash.], 192 ; *Jones v. Meyers,* 26 Pac. Rep. [Idaho], 215 ; *Ferry v. Street,* 11 Pac. Rep. [Utah], 571 ; *Randall v. Edert,* 7 Minn., 359 ; *Gray v. Stockton,* 8 Minn., 472 ; *Smith v. Custer,* 8 Dec. Dep. Int., 269.)

*Phelps & Sabin, contra:*

A certificate of purchase issued in due form, in favor of a pre-emptor, for land subject to entry under the pre-emption law, cannot be canceled or set aside by the land department for alleged fraud in obtaining it; but in such case the government must seek redress in the courts,

where the matter may be heard and determined according to the law applicable to the rights of individuals in like circumstances. A purchaser in good faith, and for a valuable consideration, from a pre-emptor of the land included in the latter's certificate of purchase takes the same purged of any fraud which might have been committed in obtaining said certificate. (*Smith v. Ewing,* 23 Fed. Rep., 741; *Moore v. Robbins,* 96 U. S., 538; *Perry v. O'Hanlon,* 11 Mo., 585; *Brill v. Stiles,* 35 Ill., 309; *Cornelius v. Kessel,* 58 Wis., 241; *Lindsey v. Hawes,* 2 Black [U. S.], 554; *Groom v. Hill,* 9 Mo., 324; *Deffeback v. Hawke,* 115 U. S., 392; *Carroll v. Safford,* 3 How. [U. S.], 441; *United States v. Freyberg,* 32 Fed. Rep., 195; *Wirth v. Branson,* 98 U. S., 118; *Wilson v. Fine,* 40 Fed. Rep., 52; *Stimson v. Clarke,* 45 Fed. Rep., 760; *Cornelius v. Kessel,* 128 U. S., 461; *Simmons v. Wagner,* 101 U. S., 260; *Sanford v. Sanford,* 139 U. S., 642; *Witherspoon v. Duncan,* 4 Wall. [U. S.], 210; *Hardin v. Jordan,* 140 U. S., 371; *United States v. Budd,* 43 Fed. Rep., 630; *Franklin v. Kelley,* 2 Neb., 89; *Jones v. Yoakam,* 5 Neb., 265; *Bellinger v. White,* 5 Neb., 399; *Donovan v. Kloke,* 6 Neb., 124; *Carroll v. Patrick,* 23 Neb., 846; *Colorado Coal & Iron Co. v. United States,* 123 U. S., 308.)

IRVINE, C.

We are met at the outset of this case by a question as to the jurisdiction of this court to review the judgment rendered in the district court. A transcript was filed as for an appeal more than six months after the rendition of judgment in the district court. There was a motion to dismiss the appeal, which was overruled by this court, and the appellant given leave to file a petition in error. We are cited to the recent decision of *Fitzgerald v. Brandt,* 36 Neb., 683, as sustaining the position that the case is not now properly before this court for review. We regard the order of the court permitting the appellant to file a petition in

error as the law of this case and sustaining the jurisdiction of the court to review the judgment as upon error. The action was one in ejectment instituted by Coffman against Headley to recover a quarter section of land in Custer county. It was submitted to the district court upon the pleadings and an agreed statement of facts, which has been incorporated into a bill of exceptions. On the 25th of August, 1884, William T. Hughes made proof of settlement and cultivation of the land in question, and made payment to the government of the purchase price under the pre-emption laws of the United States, and received the receiver's final receipt therefor. On September 2, 1884, Hughes conveyed by warranty deed to the Brighton Ranch Company, which on May 25, 1887, conveyed by quitclaim to one Hungate, who later conveyed to the plaintiff. On December 15, 1886, Headley filed in the United States land office at North Platte an affidavit of contest of the entry of Hughes upon the ground that at the time of making proof Hughes did not reside on the land as required by law; that he had not cultivated and improved it as required, and that his entry and proof were not made in good faith for his own use and benefit, but were made in fraud of the United States, and for the use and benefit of others. A hearing was ordered upon notice to Hughes, the result being that the general land office ordered Hughes' entry to be canceled, and permitted Headley to make a homestead entry under which Headley entered into possession of the land. No patent has been issued. Coffman claims under Hughes' entry, and the final receipt issued to him. Headley, to defeat the action, contends that under the circumstances ejectment will not lie and that the cancellation of Hughes' receipt divested him and his grantees of all interest in the land.

We have been cited to a vast volume of authorities bearing more or less upon the questions at issue. These authorities seem at first reading to be so divergent as to confuse, rather than to assist in forming a conclusion.

Even the cases in the supreme court of the United States seem at first to conflict with one another.  A closer examination does not entirely reconcile all the cases, but where the conflict remains, it is due rather to general language in the opinions than to any conflict in the decisions themselves.  General expressions have been made use of in the opinions, correct enough when applied to the case under discussion, but which, segregated from the facts of the case, have given rise to an unfortunate effort to apply them to other cases, and other facts.  To attempt a review of the authorities sufficiently complete to be of value would prolong this opinion to a length not justified by the object sought.  A number of the cases relate to the right of states to tax land which has been purchased from the government, and full payment made, before the issuance of the patent. The leading case upon this subject seems to be *Carroll v. Safford*, 3 How. [U. S.], 441. This line of cases goes upon the ground that upon final payment the land becomes in equity the property of the purchaser. In no such case had the question of conflicting claims been determined.  Other cases, such as that of the *Colorado Coal & Iron Co. v. United States,* 123 U. S., 307, have been direct proceedings in equity by the United States to cancel a patent already issued.  Others again, like *Stoddard v. Chambers*, 2 How. [U. S.], 284, have related to conflicting patents to the same lands.  Others again, like *Lindsey v. Hawes*, 2 Black [U. S.], 554, have been suits in equity to compel a conveyance by the patentee to one having a prior right.  These cases depend upon principles so different from those involved in the present case that general language used in the opinions must be considered with great caution.

*Fenn v. Holme*, 21 How. [U. S.], 481, and *Hooper v. Scheimer*, 23 How. [U. S.], 235, represent a class more nearly applicable. Those cases were in ejectment, no patent having yet been issued for the land.  There the plaintiffs relied on the certificate re-enforced by state statutes some-

thing similar to section 411 of our Code, and it was held that the plaintiff could not recover, because, until patent issued, the title remained in the United States, and the state statutes referred to were not binding upon the federal courts. *Bagnell v. Broderick*, 13 Pet. [U. S.], 436, differed from these cases in the fact that the certificate upon which one party relied was met by a patent to the adverse party. In that case the following forcible and significant language was used: "Congress has the sole power to declare the dignity and effect of titles emanating from the United States; * * * until the issuance of a patent the fee is in the government. * * * Nor do we doubt the power of the states to pass laws authorizing purchasers of lands from the United States to prosecute actions of ejectment upon certificates of purchase against trespassers on the lands purchased; but we deny that the states have any power to declare certificates of purchase of equal dignity with a patent."

*Wirth v. Branson*, 98 U. S., 118, and other cases of the same class, establish the doctrine that after the right to a patent becomes complete, a subsequent sale, the first remaining in force and not vacated, is absolutely void.

*Cornelius v. Kessel*, 128 U. S., 456, fixes certain limitations upon the power of the land department to revoke and cancel entries, but recognizes its right to cancel on account of disqualification of the party, or on account of the lands not being subject to entry.

We think it may be safely said that all the cases treat the subject upon the principle that the purchaser's rights are the same as they would be had the purchase been made from an individual under similar contractual relations. This principle is over and over again announced. If we accept it as a starting point, the solution of the present case is not difficult. Coffman had, by his acts and entry, entered into a contract with the United States, whereby the land was to be eventually conveyed to him. One of the

terms of that contract was that he should make proof at a certain time and in a certain manner that he had complied with certain of the conditions imposed. This proof was made. Headley thereafter brought to the attention of the proper officers the charge that the proof so made was false and fraudulent. The officer charged with the general supervision of the sale of public lands and issuance of patents, upon an investigation determined such charges to be well founded, and refused to issue the patent. This action is ejectment, and the plaintiff must recover upon the strength of his own title, and that title must be legal in its character. All the cases hold that, as between the United States and the purchaser, while the equitable title is complete in the purchaser when he has done everything upon his part to entitle him to a patent, yet the legal title passes only by the patent itself. The vendor then in this contract of sale, learning, or at least believing, that the conditions of the contract had not been performed, and that fraud had been perpetrated against it, refused to complete the sale by the conveyance of the legal title. It matters not in this case whether the commissioner of the land office had authority to cancel the entry, or whether the proceedings resulting in that act were *coram judice*. The important fact is that he did refuse to issue a patent, and the legal title did not pass out of the United States. Had the transaction been one between individuals, the vendor might, in a suit for specific performance, rely for defense upon the very matters which led the commissioner to refuse a conveyance, and upon proof of those facts defeat the case. The vendee could not recover in ejectment against the vendor, nor against the vendor's subsequent grantee. If he can do so here, it must be by virtue of section 411 of the Code, which provides that "the usual duplicate receipt of the receiver of any land office, or, if that be lost or destroved, or beyond the reach of the party, the certificate of such receiver, that the books of his office show the sale of a tract

Headley v. Coffman.

of land to a certain individual, is proof of title equivalent to a patent against all but the holder of an actual patent."

There can be no doubt that a state has power to protect the possessory rights of purchasers of government land against trespassers by means of such a statute. The state cannot, however, provide by law for the disposition of lands of the United States. It cannot enact that as against the United States, or persons claiming under the United States, the United States has parted with the legal title to lands when, by statutes and repeated decisions, the United States, in the exercise of its exclusive authority to dispose of the public lands, has declared that title shall not pass except by other conveyance. Were this a case between the holder of a final receipt, not resisted by the United States, and some one claiming under an independent title, the statute could be given force and effect; but we have here a contest between the holder of a receipt which the United States has repudiated, and one who claims under a subsequent contract of purchase from the United States itself. For this court to declare that by force of the statute the United States had divested itself of the title in such a manner as to permit the plaintiff to maintain ejectment against the subsequent vendee, would be in effect to wrest from the federal government its power of control over the disposition of its own lands, and to permit the state to nullify federal laws relating to a subject wholly within the powers of the federal government.

In *Morton v. Green*, 2 Neb., 441, the same view was taken by the majority of the court under very similar facts. The reasoning of Judge CROUNSE in that case seems to us conclusive. In fact we might very shortly have disposed of the present action by a reference to that opinion, had it not been contended that the dissenting opinion of Chief Justice MASON had been approved in later cases. The only case giving color to that theory is *Carroll v. Patrick*, 23 Neb., 834. It was there held that the statute of limitations

began to run against the entryman from the date of entry.
That was a case, however, where the plaintiff relied upon
adverse possession, and that alone, as proof of title. The
entryman might have maintained ejectment against him
from the time of receiving his certificate, the case being one
of the class to which we have held that section 411 of the
Code applies. The language of Chief Justice MASON was
cited in *Carroll v. Patrick* with approval, and it was a cor-
rect statement of the law as applied to the case there under
discussion, which was not a case like *Morton v. Green*. We
think, therefore, that the plaintiff did not show title in him-
self to sustain an action of ejectment.

REVERSED AND REMANDED.