AMERICAN EMIGRANT COMPANY, Appellant, v. VELANCEY E. FULLER, Appellee.

1. **Pleading:** PLEA OF FORMER ADJUDICATION: GENERAL DENIAL: EVIDENCE. Where, in an action to quiet title to land, the plaintiff pleaded a certain judgment as a final adjudication of the claims of the defendant, to which the defendant answered merely by general denial, *held*, that the jurisdiction of the court was not put in issue by the answer, and that the record of the judgment was competent evi-

| 83 | 599 |
| 83 | 613 |
| 83 | 599 |
| 87 | 110 |
| 83 | 599 |
| 90 | 426 |
| 83 | 599 |
| 96 | 464 |
| 96 | 569 |
| 83 | 599 |
| 104 | 702 |
| 83 | 599 |
| 112 | 346 |
| 83 | 599 |
| 114 | 119 |
| 83 | 599 |
| 118 | 457 |
| 83 | 599 |
| 123 | 586 |
| 83 | 599 |
| 136 | 44 |
| 136 | 49 |

dence in support of the averments of the petition without proof of the service of process therein, nor of the pleadings.

2.   **Judgments:** INTERPRETATION: EXTRINSIC EVIDENCE. The lands in controversy were not described in the judgment above referred to, but it was decreed therein that the county of C., through whom the defendants in this action claim title, was estopped from impeaching the title of the plaintiff herein to the lands entered in the name of said county with the swamp land indemnity scrip, that it should convey said lands to the plaintiff, and should not impeach the validity of the contract in relation to said lands between said county and the plaintiff, dated December 12, 1861. To show that the decree applied to the lands in controversy the plaintiff offered in evidence an agreement· which recited that it was made on December 12, 1861, but purported to have been signed December 18, 1861, and a deed which referred to the contract as of December, 1861. *Held*, that, in the absence of evidence that other contracts and deeds were made on the dates named, said instruments were sufficient to show that so much of the land in controversy as is swamp land was a part of that referred to in the above judgment.

3.   ———: ———. The said decree recited that "This cause coming on for final hearing upon the stipulation of parties, it is ordered, adjudged," etc. *Held*, that said clause was to be construed to mean that the cause came on for final hearing at that time by stipulation of the parties, and not that the decree therein was rendered pursuant to such a stipulation.

4.   **Quieting Title:** SWAMP LANDS: ADVERSE POSSESSION: STATUTE OF LIMITATIONS. The lands in controversy were returned to the general land-office as swamp lands, under the swamp-land act of congress of 1850, but in 1858 the secretary of the interior certified the land as being a part of a grant to aid in building a railroad from Dubuque to Sioux City; said grant being made subject, however, to all prior sales or other disposition within its limits. The land was never in the actual occupation of anyone prior to the commencement of this action. *Held*, that the fee-simple title to the land passed to the state by virtue of said act of congress of 1850, and to the county by the act of the general assembly of 1853, and the legal possession thereunder never having been disturbed by the defendant nor its grantors, this action was not barred by the statute of limitations.

5.   ———: ———: LACHES: ABANDONMENT OF TITLE. No patent was ever issued transferring the lands in question to the state, but the character of the land was readily ascertainable by anyone, the records of the county showed a conveyance of it to the plaintiff, and the judgment above referred to was rendered only five years prior to the commencement of this action. *Held*, that the absence of any public action on the part of the plaintiff in relation to said land for five

years preceding this action was not sufficient to create a presumption of abandonment of title by the plaintiff, nor that it had acquiesced in the adverse title of the defendant.

6.   ——: ——: IDENTIFICATION: EQUITY: JURISDICTION.   Where the secretary of the interior has failed to identify any swamp lands lying within the state, the question whether certain lands claimed under the swamp-land act of congress of 1850 are of the character described in said act may be determined by courts of equity in actions to quiet title thereto.

7.   Practice: EQUITABLE RELIEF: GENERAL PRAYER.   A prayer for general equitable relief in an equitable action will not authorize a decree giving affirmative relief for which no foundation has been laid in the pleadings.

*Appeal from Calhoun District Court.*—HON. J. H. MACOMBER, Judge.

THURSDAY, OCTOBER 22, 1891.

ACTION in equity to quiet the title to certain land situated in Calhoun county. Upon final hearing, the district court granted to the plaintiff the relief demanded as to a portion of the land in controversy, and denied it as to the remainder. Both parties appeal, the plaintiff being known as the appellant. *Affirmed.*

*Seevers & Seevers* and *J. J. Davis,* for appellant.

*Charles A. Clark,* for appellee.

ROBINSON, J.—The plaintiff claims to be the owner of the east half of the northwest quarter, the southeast quarter of the northwest quarter, the southwest quarter of the northwest quarter, and the northwest quarter of the southwest quarter of section 27, in township 89 north, of range 33 west. Its alleged title is derived from an act of congress approved September 28, 1850, entitled "An act to enable the state of Arkansas and other states to reclaim the swamp lands within their limits;" an act of the general assembly of the

state of Iowa, which took effect February 2, 1853, entitled "An act to dispose of the swamp and overflowed lands within the state, and to pay the expenses of selecting and surveying the same;" an agreement made between it and the county of Calhoun, dated December 12, 1861; a deed made by the county to trustees on the fourteenth day of September, 1863; a deed made by the sole surviving trustee to the plaintiff on the twenty-ninth day of February, 1872; and a decree of the circuit court of the United States for the district of Iowa.

The defendant claims title through the Dubuque & Sioux City Railroad Company, under a grant made by act of congress approved May 15, 1856, to aid in building a railroad from Dubuque to Sioux City, and for other purposes. It is agreed that the land in controversy is within the limits of the railroad grant named, and was earned by the building of a road under the grant, if subject thereto, and that the defendant holds whatever title or interest passed under the grant to the railroad company. He demands that his title be quieted as against the plaintiff. The court below rendered a decree in favor of the plaintiff for all the land in controversy, excepting the southeast quarter of the northwest quarter of section 27, and in favor of defendant for that tract.

I. The appellee insists that the agreement made between the county and the plaintiff was void, because not duly ratified by a vote of the people; that the deed to trustees for the benefit of the plaintiff conveyed no title, because based on a void agreement; and that the deed is not shown to have been delivered, and was defective, and not effectual as a conveyance. The appellant denies the alleged defects, and insists that the decree of the federal court is an adjudication as to the validity of the agreement and deed, which is binding

1. PLEADING: plea of former adjudication: general denial: evidence.

upon the parties to this action.   The decree was rendered on the twentieth day of May, 1872, and is as follows:

"Calhoun County

v.                                    } Equity.

"American Emigrant Company.

"And now, this cause coming on for final hearing upon the stipulation of parties, it is ordered, adjudged and decreed as follows:   That the bill of the complainant be, and is hereby, dismissed as upon the merits and final hearing, and that the said dismissal shall forever operate as a bar and estoppel against the complainant to set up any title or right to the lands or funds in controversy in this suit, or to maintain any suit or proceeding, either at law or in equity, in anywise impeaching the title of the American Emigrant Company to the lands in controversy in this suit, or the lands entered in the name of said county, with the swamp-land indemnity scrip; and said Calhoun county shall convey to the defendant said last-named lands as hereinafter described, and said county shall not in any manner impeach the validity of the contract between said Calhoun county and the American Emigrant Company, dated December 12, 1861, or the deed executed to said American Emigrant Company, or in trust for said company, dated September 14, 1863.   *   *   *"

The only land described in the decree is denominated "scrip land," and is in Kossuth county.   The only part of the record proven was the decree.   The appellee contends that the proof was insufficient under the pleadings to show a valid adjudication in favor of the plaintiff of the title to the lands in controversy, and numerous authorities are cited in support of the doctrine stated as follows:   "The general rule is that, when a party intends to avail himself of a decree or an adjudication upon the subject-matter, and not merely to prove collaterally that the decree was made, he must

show the proceedings upon which the decree was founded. The whole record which concerns the matter in question ought to be produced." 1 Greenleaf on Evidence, sec. 511.

The petition alleges that, after the making of the contract and deed by the county, it brought suit in the district court of the county to obtain a decree setting them aside, and declaring them void, and to recover the land and interests thereby conveyed, including the land in controversy; that said suit was removed to the circuit court of the United States for the district of Iowa, and such proceedings had therein that on the date specified a final decree was rendered, declaring the contract and deed valid, and binding on the county, and establishing the title to the land and interests thereunder, including the land in suit, in the plaintiff, and decreeing that the county be estopped and forever restrained from making any claim adverse to the plaintiff and from in any manner impeaching the validity of the contract or deed. The answer to these averments is a general denial.

The common-law rule in regard to pleading judgments has been somewhat relaxed by statute. 12 American & English Encyclopedia of Law, 149e–g, and authorities therein cited. In this state it is not necessary in pleading a judgment to state the facts conferring jurisdiction, but it is sufficient to state that the judgment was duly rendered. Code, sec. 2714. If such statement is denied, it is not sufficient to do so by a general denial, but the facts relied on must be specifically stated. Code, sec. 2717. The judgment is that part of the record of a case which is of final importance. It is that for which the parties litigate, and that which determines their rights. It is that which gives them the relief to which they are entitled. The service of the original notice and the pleadings are but means to an end. A judgment for money is a lien

upon the real estate of the judgment debtor in the county where rendered. Code, secs. 2882, 2883. It may be made a lien upon his land in other counties by filing therein attested copies of the judgment. Code, secs. 2884, 2885. When an execution is sent into another county than that in which the judgment was rendered, a transcript of the judgment should be filed in the county to which the execution is sent. Code, sec. 3031. When real property is the subject of an action brought and determined in another county, a transcript of the final order, judgment or decree should be filed in the county where such land is situated, to give constructive notice of the adjudication. Code, sec. 2629. These and other statutory provisions, which need not be specified, show that special force and effect are given to the judgment entries of courts in this state having general jurisdiction. In such cases, the judgments are presumed to have been duly rendered by a court having jurisdiction, not only of the subject-matter of the litigation, but of the litigants, so far as necessary to authorize the rendition of the judgment, until the contrary is shown. It is not necessary to inquire into the service of process until the question of service is properly made an issue.

Courts sometimes exceed their jurisdiction in granting relief not demanded or not authorized by the pleadings, but the presumption is that the relief granted is authorized, and the burden is upon him who attacks the judgment to show that it was not. Every act of a court of competent jurisdiction is presumed to have been rightly done until the contrary appears. *Harvey v. Tyler*, 2 Wall. 328; *Kipp v. Collins*, 33 Minn. 394; 23 N. W. Rep. 554. The competency of judgment entries, and even of entries in the judgment docket, without other parts of the record, has been frequently recognized by this court. *Suiter v. Turner*, 10 Iowa, 525; *Weider v. Overton*, 47 Iowa, 539; *Rea v. Scully*, 76

Iowa, 345; *Taylor v. Wendling*, 66 Iowa, 563; *Moore v. McKinley*, 60 Iowa, 373. In our opinion, the record of the judgment was competent evidence, without proof of the service of process and the pleadings. *Beck v. Henderson*, 76 Ga. 369; *Gardere v. Columbian Ins. Co.*, 7 Johns. 518; *Baudin v. Roliff*, 14 Am. Dec. 183.

II. The land in controversy is not described in the judgment, hence other evidence was necessary to identify it as being included in that contemplated by the decree. It would have been proper practice certainly to have introduced a duly authenticated copy of the pleadings. *Fowler v. Doyle*, 16 Iowa, 535. Whether, if objection had been made, such proof would have been required as being the best obtainable, we need not determine, for the reason that other evidence to show the application of the decree was introduced without objection. That extrinsic evidence is competent to prove what was in fact adjudicated, when the record is not sufficiently clear for that purpose, is well settled, and not denied by the appellee. *Russell v. Place*, 94 U. S. 606; *Goodenow v. Litchfield*, 59 Iowa, 231.

<span style="margin-left:2em">2. JUDGMENTS: interpretation: extrinsic evidence.</span>

To show that the decree applied to the land in controversy, the plaintiff introduced evidence that an agreement between the plaintiff and Calhoun county, for the conveyance by the latter of all its swamp land to the former, had been made and ratified by the voters of the county, the agreement itself, and the deed executed by virtue of it. Evidence which tended to show that the land was in fact swamp and overflowed, within the meaning of the act of congress, was also submitted. The appellee objects to the agreement and deed, on the ground that they are not sufficiently identified by the decree. That refers to a contract between the county and the plaintiff "dated December 12, 1861." The first part of the contract is in language as follows: "Memoranda of an agreement made the twelfth day of

December, 1861, between the county of Calhoun, in the state of Iowa, of the first part, and the American Emigrant Company," etc. The sentence next preceding the signature is as follows: "In witness whereof, said parties have hereunto set their hands and seals this eighteenth day of December, 1861." There is no conflict between the dates given. The instrument recites that it was made on the twelfth day of December, 1861, and that must be regarded as the date when it was in fact made, and the last one mentioned as the date on which it was formally signed. The deed refers to the contract as "bearing date the twelfth day of December, 1861." It is true, it is possible that other contracts and deeds may have been made on the dates named in the decree, but it is not at all probable that they were, in view of the fact that those introduced included all the swamp land of the county. In the absence of any showing to the contrary, we think the evidence introduced was sufficient to show that so much of the land in controversy as is actually swamp land was a part of that to which the decree referred.

III. It is said that the decree was rendered by consent of the county, and is, therefore, invalid. Whether such consent would have rendered the decree invalid, is a question not involved in the case, for the reason that the record does not show that the decree was so rendered. It recites that the cause came on "for final hearing upon the stipulation of parties," and not that the decree was rendered pursuant to the stipulation.

We are entirely satisfied, from the record, that the decree rendered by the federal court adjudicated the legality of the contract between the county and the plaintiff, and the deed executed in performance of it. They must be regarded as valid for the purposes of this action. The deed was sufficient in form to operate as a conveyance of all the interests of the county in its

swamp land, and must be held to have had that effect. It follows that whatever title the county acquired under the swamp-land grant was transferred to the appellant.

IV. It is claimed that the action of the plaintiff is barred by the statute of limitations. The land in question was selected as swamp by the agents of the county, and a return thereof made to the general land-office; but it does not appear that the list so returned was ever acted upon by the secretary of the interior. In the year 1858 he certified the land as being a part of the grant to aid in building a railroad from Dubuque to Sioux City. It is not shown that the land was ever in the actual occupation of anyone prior to the commencement of this action in the year 1877. It is the theory of the appellee that the legal title to the land was conveyed by the certificate of the secretary of the interior in the year 1858, and that a right of action then accrued in favor of the claimant under the swamp-land grant. An action for the recovery of real property is barred if not brought within ten years from the time the cause of action accrues. Code, sec. 2529, par. 5. But we do not think this case is within that provision of the statute. It has been held repeatedly, not only by this court, but by the supreme court of the United States, that the swamp-land act of congress of 1850 operated as a grant *in præsenti* by virtue of which the title was at once vested in the state. "The grant itself, without a patent, conveyance or any formal assurance, passed the title to the grantee." *Page Co. v. B. & M. Ry. Co.*, 40 Iowa, 521, and cases therein cited; *Snell v. Dubuque & S. C. Ry. Co.*, 78 Iowa, 90; *Wright v. Roseberry*, 121 U. S. 488; 7 Sup. Ct. Rep. 985, and cases therein cited. The act of the general assembly of Iowa of 1853 operated in the same manner to vest the title acquired by the state in the respective counties in which it was

*Margin note:* 4. QUIETING title: swamp lands: adverse possession: statute of limitations.

located.   By virtue of these acts, the fee title to the swamp land in question was in Calhoun county in the year 1853.   The transfer of the title carried with it the legal possession of the land.   *Robinson v. Lake*, 14 Iowa, 424; *Jones v. Hockman*, 12 Iowa, 107.   That possession was never disturbed by any actual entry by the defendant or his grantors.   But it is said that the certification by the secretary of the interior carried with it the legal title.   The grant of May 15, 1856, was made subject to all prior sales or other disposition of the land which was within its limits.   That condition was recognized in the certificate of the secretary of the interior.   The list which he certified purported to be of "the vacant and unappropriated lands in the alternate sections, designated by odd numbers, for sixteen sections in width on each side of the railroad."   The approval of the list was subject to all the conditions of the act named, "and to any valid interfering rights which may exist to any of the tracts" embraced in the list.   Although the list was *prima facie* evidence of the land which belonged to the grant, yet it did not in fact create any right adverse to the title transferred by the swamp-land act, but was subject to it.

An act of congress approved August 3, 1854, provides that such lists, so far as they include land not embraced in the granting act, "shall be perfectly null and void, and no right, title, claim or interest shall be conveyed thereby."   1 Lester on Land Laws, 236; *Fremont Co. v. Burlington & N. W. Ry. Co.*, 22 Iowa, 130.   Therefore, as to the swamp land contained in the list, the certificate created no interest and gave no right of possession, but merely created a cloud upon the title.   The defendant, having failed to show title or actual possession as to such land, has failed to show that the action is barred.   Buswell on Limitations, sec. 237; Cooley on Constitutional Limitations, 449.

VOL. 83—39

V.   It is claimed that the plaintiff's cause of action is barred by laches and acquiescence in the apparent title of the defendant.   No patent transferring the land in question to the state under the swamp-land act was ever issued, and the records of Calhoun county failed to show a claim of title from the general government to the plaintiff, but the character of the land was readily ascertainable by anyone, and it was selected, recognized and treated as swamp by the officers and agents of Calhoun county.   The public records of that county showed a conveyance of it to the plaintiff.   The action commenced by the county terminated in a decree rendered in the year 1872, quieting the title to the land in the company.   This action was commenced in the year 1877.   The defendant and his grantors necessarily had knowledge of the claim of the plaintiff, and the lapse of five years from the date of the decree in the federal court to the commencement of this suit, without public action on the part of the plaintiff, if none was in fact taken, was not sufficient to create a presumption of abandonment; and, even if the defendant and his grantors had paid the taxes during that time, and before, in the absence of possession, that fact would not change the rule.   The plaintiff has been asserting title for many years.   There is no evidence that it has ever abandoned it, or that it has given any one reason to believe at any time that it acquiesced in any adverse title.

*5. ——: ——: laches: abandonment of title.*

VI.   The appellee contends that courts of equity are without jurisdiction to inquire into and determine the character of the land, for the reason that it was the duty of the secretary of the interior to do so.   The swamp lands were selected, and lists, with proof, were filed in the general land-office, in the year 1860.   It was his duty to act upon them, but it does not appear that he has done so.

*6. ——: ——: identification: equity: jurisdiction.*

It is now well settled that in such a case the character
of the land may be ascertained and determined by a
court of competent jurisdiction.   That was announced
as the law in *Railway Co. v. Smith*, 9 Wall. 95.   In
*Wright v. Roseberry*, 121 U. S. 488; 7 Sup. Ct. Rep.
985, the authorities on that question were reviewed,
and the law was announced as follows:   "The result
of these decisions is, that the grant of 1850 is one *in
præsenti*, passing the title to the lands as of its date,
but requiring identification of the lands to render the
title perfect; that the action of the secretary in identi-
fying them is conclusive against collateral attack, as
the judgment of a special tribunal, to which the deter-
mination of the matter is intrusted; but, when that
officer has neglected or failed to make the identifica-
tion, it is competent for the grantees of the state, to
prevent their rights from being defeated, to identify
the lands in any other appropriate mode which will
effect that object."   See, also, *Snell v. Dubuque & S. C.
Ry. Co.*, 78 Iowa, 90, and cases therein cited.   That
the courts have jurisdiction in cases like this to ascer-
tain and determine the character of the land cannot
now be successfully questioned.   If it be determined
that any of the land in question is swamp or overflowed
land, within the meaning of the swamp-land act of
1850, it will be, in effect, determined that it was not
intended to be included in the list certified by the sec-
retary in 1858, and that as to such land the certificate
is void.

We understand that the appellee does not now
claim that any of the tracts of land adjudged by the
district court to belong to the plaintiff were not of the
character contemplated by the swamp-land grant.   If
we are mistaken in this, it is sufficient to say that the
evidence shows clearly that all of them are of that
character.   The evidence as to the southeast quarter of
the northwest quarter of section 27 is conflicting, but

in our opinion a decided preponderance of the evidence shows that more than one-half of it is swamp and overflowed land.

VII. It is urged by the appellee that, if any of the land in controversy is found to belong to the plaintiff, it should be compelled to refund the taxes which the defendant and his grantors have paid. An insurmountable objection to our granting such relief is the fact that the proper foundation for it was not laid in the pleadings. It is true the defendant in his answer asks for general equitable relief, but the only reference to taxes paid to be found in his answer is an averment, in connection with the pleading of the statute of limitations, that the defendant, and those under whom he claims, have continuously paid the taxes since the year 1861. The payment of the taxes was pleaded in connection with the matter as a defense, and not as a basis for affirmative relief. The payment was denied by the plaintiff, but, as no demand for affirmative relief was based on the alleged payment of taxes, it was not necessary, if proper, for the plaintiff to plead any defense it may have had to the claim founded on such payment; and the question of its liability therefor is not an issue, and cannot be adjudicated. *Tice v. Derby*, 59 Iowa, 315.

7. PRACTICE: equitable relief: general prayer.

What we have said disposes of the controlling questions in the case. The judgment of the district court as to both appeals is AFFIRMED.