JAMES C. YOUNG, Appellant, v. AMUND HANSON.

95 717
96 572

95 717
e114 119
e114 126

95 717
115 34

95 717
126 8

**Jurisdiction:** COLLATERAL ATTACK. Where a swamp land claim is
1 canceled by the department of the interior without any notice
except one served upon an attorney who had no authority to
2 appear for the claimant of the land, the cancellation is void and
subject to collateral attack.

*Appeal from Webster District Court.*—HON. N. B. HYATT, Judge.

TUESDAY, OCTOBER 15, 1895.

The parties to this action present conflicting claims of ownership to forty acres of land in Webster county. The suit is in equity, and each party demands that his title to the property be established and quieted as against the other. There was a decree in the district court for the defendant, and the plaintiff appeals.—*Affirmed*.

*R. M. Wright* for appellant.

*Frank Farrell* for appellee.

YOUNG v. HANSON. [95 Iowa

Rothrock, J.—1. The plaintiff claims title to the land under the act of congress known as the "Railroad-Land Grant," of May 15, 1856, and a grant from the state of Iowa to the Dubuque & Pacific Railway Company, and by subsequent transfers to the Dubuque & Sioux City Railway Company, and by a certification of the land by the department of the interior to the last-named company, bearing date November 14, 1891, and by a quitclaim deed from the railroad company to William Ragan, and a like deed from Ragan to the plaintiff. The defendant's claim of ownership is founded on what is known as the "Swamp-Land Grant," passed by congress on the twenty-eighth day of September, 1850, and by an act of the general assembly of this state passed January 13, 1853, and the subsequent selection of the land as swamp land, and the sale of the same by the county of Webster to John F. Duncombe, a deed from Duncombe to Thomas Snell, and by a written contract of sale of the land by Snell to the defendant, dated in the month of June, 1875, and a warranty deed from Snell to the plaintiff, dated in June, 1880. At the time of the contract of purchase from Snell, the defendant paid one hundred dollars of the purchase money, and in the same year he took actual possession of the land, and he has ever since that time been in actual, open, and notorious occupancy of the same. He erected a dwelling house and farm buildings on the land, and has occupied and used them from 1875 to the present time. The consideration paid by the defendant for the land was six dollars and fifty cents an acre.

The first question to be determined is, was the land in September, 1850, when the swamp-land act was passed by congress, of the character designated as swamp land in the grant. A number of witnesses

were examined upon this question of fact. The testimony of these witnesses has received proper consideration in our investigation of the case, and we think the very decided preponderance of the evidence is that more than one-half of the land was swampy and unfit for cultivation in the year 1850. The principal witnesses for the plaintiff consisted of a surveyor and his party who made a survey of the land and took observations thereof a short time before the hearing of the case in the court below; and, after describing the present condition of the land, these witnesses gave their judgment as to how much of the land was swampy in the year 1850. This evidence is very unsatisfactory, and in *Connors v. Meservey*, 76 Iowa, 691 (39 N. W. Rep. 388), it was held that evidence of the present condition of the land is immaterial. The testimony of witnesses who knew the land in its original and natural state, when that part of the country was but very sparsely settled, and before any attempt had been made to break up the sod and cultivate that and the adjoining lands, satisfactorily shows that the tract in controversy was properly selected as having passed under the swamp-land act.

II.   The selection of the land as swamp land, the conveyance to the county, and the subsequent conveyance to Duncombe, and from him to Snell, and from Snell to the defendant, appear to have been in due form and in substantial compliance with every legal requirement. But the plaintiff claims that the swamp-land selection was canceled and set aside by the department of the interior in the year 1878. It appears that certain proceedings were had before the register and receiver of the United States land office at the city of Des Moines on the thirtieth day of January, 1878, by which it was determined that the land in controversy was not swamp land, within the meaning of that grant. These proceedings were had in

what purports to be a contest between the railroad company and Thomas Snell. No service of any notice of the contest was had upon Snell, who then held the swamp-land title, as appeared of record; and no notice was served upon the defendant herein, who was then and had been for several years in the actual possession of the land under his contract of purchase, and occupying it as a home. Snell was a nonresident of this state. The records of the local land office show that W. A. Meservey appeared as attorney for Thomas Snell; but the evidence in this case shows that the appearance was without any authority from Snell, and the proceeding was had without Snell having any knowledge of it. The proceedings before the local land office were certified to the general land office and on the sixteenth day of April, 1878, the commissioner of that office wrote a letter to the register and receiver at Des Moines to the effect that sufficient evidence appeared to justify a decision that the land was not of a swampy and overflowed character, and that the swamp-land claim was held for rejection, subject to appeal. The letter concluded as follows: "You are therefore directed to notify the state authorities and all other parties claiming an interest in said lands of the action of this office in said case, allowing sixty days from date of service of such notice for appeal, and, at the expiration of that time, report to this office whether or not appeal has been taken. Very respectfully," etc. No notice of the right to appeal was served on Snell, nor on the defendant herein. There appears to be a recital in the records of the local land office that "all parties plaintiff, the state of Iowa, the county of Webster, and Meservey, of Fort Dodge, attorney for Snell, notified April 20, 1878." Upon this record of notice the general land office assumed to take jurisdiction, and decide that the swamp-land

claim should be rejected. There was no jurisdiction of Snell nor of the defendant herein by any service of notice. As we have found, Meservey was not authorized to appear in the proceeding in behalf of Snell, and any service on him was void. A service of notice on the county, and some sort of an attempted service upon the state of Iowa, were utterly void as to the real owners and claimants under the swamp-land grant. The contention of counsel for appellant that the defendant cannot question the service, because this is a collateral attack upon the proceedings of the land department, appears to us to be without merit, because the record does not even show defective service. It is a case of no service. That it was incumbent upon the plaintiff to prove that notice of the right to appeal was given to those claiming under the swamp-land grant was held in *Connors v. Meservey,* 76 Iowa, 691 (39 N. W. Rep. 388).

III.  In addition to the facts above found, it may be well to consider the equities between the parties. If the railroad company ever had any valid claim to this land, it should have made the discovery long before the year 1878. All of its lands in Webster county were earned years before that time. Its agents and experts were on this land in 1877 for the purpose of making examination of it. The defendant was then in actual possession, having his home on the land, and they knew it. The requirement of the general land office was that all parties claiming an interest in the land should be served with notice of the right to appeal from the decision of the local land office. No attempt was made to serve any notice on the defendant nor on Snell, who was the record owner of the swamp-land claim. It does not appear how a survey of the land was accomplished in September, 1877, without the knowledge of the defendant or some of his family. This action was brought in January,

1893, nearly eighteen years after the defendant took up his abode upon the land in controversy, in the belief that his purchase was from one having the title to the property; and, so far as appears, the first knowledge he had that his title was seriously questioned was the commencement of this suit founded upon a quitclaim deed from the railroad company. These facts, in addition to the consideration that the land was actually swampy land, and that the claimed adjudication that it was not is void, show that the persuasive equities of the case are with the defendant. The decree of the district court is *affirmed*.