## Z. BOURNE V. WILLIAM RAGAN, Appellant.

**Equitable Estoppel.** Where a railway company for many years fails
3  to object to a land purchase from a county as swamp land, and
permits the purchaser to improve the land, it is estopped to deny
4  his title, though the land is, subsequent to said purchase and
improving, confirmed to it by the secretary of the interior.

**SWAMP LAND: EVIDENCE.** Evidence that land, at a remote time,
1  before the sod in this part of Iowa had been broken was swamp
land, sufficiently shows that it passed under the swamp land
grant of 1850, though that evidence does not go as far back as
1850.

**Practice.** One who has no valid title to land cannot question the
2  grant by a county board of land granted the county where the
county and the tax payers make no objection.

*Appeal from Hamilton District Court.*—HON. N. B.
HYATT, Judge.

### WEDNESDAY, JANUARY 22, 1896.

This is a suit in equity to quiet the plaintiff's title
to forty acres of land in Hamilton county. The defend-
ant answered, denying that plaintiff had title to the
property, and by way of cross bill he claimed that he
was the owner, and he asked that his title be quieted
as against the plaintiff. There was a decree for the
plaintiff, and defendant appeals.—*Affirmed.*

*Wesley Martin* for appellant.

*A. N. Boeye* for appellee.

Rothrock, C. J.—I. The plaintiff claims title to the
land under the act of congress known as the "Swamp
Land Grant," passed September 28, 1850. The defend-
ant claims the land under what is known as the
"Railroad Land Grant," of May 15, 1856. In short,

the case presents conflicting claims under the two acts of congress above named, which grants have in many cases been considered by this court as well as the supreme court of the United States. There is no question that the land in controversy in this case is within the limits of the railroad grant, and that it was a part of that grant, unless the claim that it was swamp land can be invoked by the plaintiff in support of his claim of title. It is contended by appellant that the land was not swamp land in 1850, when that grant was made. The plaintiff assumed the burden of proving that it was then such land as passed by this grant. A number of witnesses were examined on this question of fact, and their testimony shows beyond any reasonable doubt that it was swamp land. It is true none of these witnesses claimed to have seen the land in 1850. But a number of them knew it for many years. One testified that he had knowledge of it for thirty years, and others testified to its swampy character at times so far remote as to show that when the country was in a state of nature, and before the prairie sod in that part of the state was broken up, and the country was sparsely settled, the land was nearly all swamp. It is true that none of these witnesses knew this land in the year 1850, but their testimony relates to a time when it is fair to presume that the condition of the land was practically the same as it was when the swamp land grant was enacted. This finding is strongly supported by the fact that the evidence shows that now, after the country has been improved, the land is of a swampy character, and that no more than ten or twelve acres is suitable for cultivation. There is no evidence in conflict with that above considered, except the testimony of the defendant, who saw the land in 1892 as he "rode past it in a buggy and noted it from the roadway." This question in the case requires no further consideration.

II.. It appears that on April 12, 1883, the board of supervisors of Hamilton county conveyed the land in controversy to A. O. Cragewick for the sum of three hundred dollars, which was paid into the county treasury. The deed contained a covenant of general warranty of the title. The purchaser took immediate possession of the land, and broke up above twelve acres of sod, which was all that was susceptible of cultivation. He afterwards died, and his heirs sold and conveyed the land to the plaintiff, who has continued to use the same for such purposes as it was adapted to up to this time, and the plaintiff and his grantors have since the year 1883 paid the taxes on the land. It does not appear that there was at any time any selection of the land as swamp land, and there is no evidence of any affirmative acts of the county in the assertion of a swamp land claim to the land except the fact that the county conveyed it to Cragewick. It will be observed, however, that the deed was not a mere quitclaim. It was in the form of an assertion of absolute title; and the consideration was not nominal, being at the rate of seven dollars and fifty cents an acre. Some question is made by the defendant to the effect that the deed executed by the board of supervisors is void for the reason that the board was not authorized by law to sell the land. We do not think this question is a material one in this controversy. In the view we take of the case, the defendant is in no position to profit by any want of power in the board to convey the land. In our opinion, the defendant has no title or valid claim to the land, and so long as the county and its taxpayers are content with the acts of the board, the defendant cannot be heard to question the conveyance.

III. The defendant claims that the land was properly selected as belonging to the Dubuque & Sioux

City Railroad Company under the grant of 1856. The selection of this land was filed in the local land office in December, 1877, and on the fourteenth day of November, 1891, the list was approved by the secretary of the interior. It does not appear that there was any contest in regard to this selection and the approval thereof. After the selection was approved and certified, and on the nineteenth day of February, 1892, the railroad company executed a quitclaim deed to the defendant for the land. This suit was commenced on the twenty-eighth day of April in the same year. The controlling question in the case is whether the plaintiff had such an interest in the land as to entitle him to prove by parol that the title passed to the state and county under the swamp land grant and the subsequent acts of the legislature of this state. If we were to follow the case of *Hays v. McCormick*, 83 Iowa, 89 (49 N. W. Rep. 69), and other cases determined by this court before and after that case was decided, there would be no question that the decree of the district court should be affirmed. In the cited case, and others, we have held that, as the swamp land grant was a grant *in praesenti*, no formal conveyance was required to vest the title to the lands in the grantees, and that the act of the general assembly of 1853 operated in the same manner to vest the title to such lands in the respective counties in which they were situated. See *Emigrant Co. v. Fuller*, 83 Iowa, 599 (50 N. W. Rep. 48). The case of *Hays v. McCormick*, above cited, was removed to the supreme court of the United States upon a writ of error, and the decision was reversed on the twenty-first day of October, 1895 (16 Sup. Ct. Rep. 37), since this cause was submitted to this court. The opinion of the supreme court, after a review of a number of cases determined by that court, holds that, under the facts in that case, the title under the railroad grant was valid, and that it was not

competent for the claimant under the swamp land grant to sustain his claim to the land by parol evidence that it is and was in fact swamp land. The principle upon which the decision is based is that, as the law confided to the land department of the government authority to hear and determine conflicting claims under the respective grants, the decision of that tribunal was, within the scope of its authority, conclusive upon all others. We need not further refer to the decisions of the supreme court of the United States upon this question, more than to say that most of them were actions at law in ejectment, and in some of them that fact is referred to as a reason for holding the acts of the land department as conclusive. In *French v. Fyan,* 93 U. S. 169, the following language is employed: "We see nothing in the case before us to take it out of the operation of that rule, and we are of the opinion that in this action at law it would be a departure from sound principle, and contrary to well-considered judgments in this court and in others of high authority, to permit the validity of the patent to the state to be subjected to the verdict of a jury on such oral testimony as might be brought before it." It is further said in that case, in substance, that if any relief can be had, it must be by a resort to the equitable jurisdiction of the courts. The facts in the case of *Hays v. McCormick,* upon which it was held that the plaintiff could not maintain his claim to the land, are correctly stated in the opinion of the supreme court of the United States, as follows: "In the case now before us, the selection by Linn county, grantee of the state, prior to 1875, of swamp and overflowed lands in the very section of which the lands in dispute formed a part, without including the latter in such selection, together with the acquiescence in that selection by the interior department, and the selection by or under the direction of the secretary of the interior, and their

certifications to the state, first in 1858, and again in
1881, of the lands in dispute, as lands inuring under
the act of congress of May 15, 1856, to the Cedar
Rapids & Missouri River Railroad Company, and,
therefore, not lands embraced by the act of 1850, con-
stituted a determination, based on 'observation and
examination,' that the lands here in dispute were not
swamp and overflowed, and therefore had not been
reserved or appropriated prior to the date of the rail-
road land grant act, but passed, as the secretary of
the interior certified to the state, for the purposes
named in the railroad act. Twice the land department
certified these lands to the state as inuring to it under
the railroad land grant act, and it does not appear
that the state has ever questioned the correctness of
that certification or applied to the secretary of the
interior for a re-examination as to the character of the
lands. Nor did the county of Linn, so far as the record
shows, ever contend that these lands belonged to it
under the act of 1850, as the grantee of the state, until
its board of supervisors, for the consideration of thirty
dollars (their deed, however, reciting one dollar as
the consideration), sold them to the plaintiff, taking
his promissory note for the price. This was in 1888, a
few days before this suit was brought, and more than
thirty years after the secretary of the interior first
certified the land to the state as railroad grant
lands." We have stated some of the facts in
the case at bar. It will be observed therefrom
that the railroad company made no assertion of any
right to this land until more than twenty years after
the land grant act was passed; and when it attempted
to make the selection, late in the year 1877, further
action in that matter was not taken until late in the
year 1891, when the selections were approved by the
secretary of the interior. This was more than twenty
years after the railroad was entitled to the land, if it

had any right thereto. What was known as the Dubuque & Sioux City Railroad was constructed from the east to the west line of the state, and the lands which the railroad company claimed under the grant in Buena Vista county were patented to it about seventy-five miles west of the land in controversy in the year 1871. See *Buena Vista Co. v. I. F. & S. C. R. Co.*, 55 Iowa, 157 (4 N. W. Rep. 474). There can be no other reason given for the failure to select this land in Hamilton county, before it was selected, than that it was known to be swamp land, and therefore did not pass by the railroad grant. The fact is that this last selection, approved November 14, 1891, was designated as a "Supplemental List of Lands, No. 50," and about one thousand acres were approved as passing under the grant. It was quitclaimed by the railroad company to one of its employes, and is part of the same selection under which title was claimed in the case of *Young v. Hanson*, 95 Iowa, 717 (64 N. W. Rep. 654). The plaintiff had been in actual possession of this land, under his conveyance from the county, for more than eight years before the selection of it as railroad land was approved. He had improved it by putting about twelve acres of it in cultivation, and the evidence tends to show that ditches had been dug for the purpose of drainage. We have stated the facts with some particularity because we think that the decree of the district court should be affirmed upon the ground of equitable estoppel, by the failure of the railroad company to assert any claim to the land for many years, and by permitting the plaintiff without objection to purchase it from the county, and expend his money in its improvement. The laches of the railroad company are such that every equitable consideration demands that it and its employe should be estopped from now questioning the plaintiff's title. It is quite apparent that the innocent purchasers of these lands

should be protected in their homes from such attacks as are made upon them in this case, and in the case of *Young v. Hanson,* above cited.    There are no other questions which require consideration, and the decree of the district court is *affirmed.*