OF THE

## STATE OF IOWA

AT

## DES MOINES, SEPTEMBER TERM, A. D. 1904

AND IN THE FIFTY-EIGHTH YEAR OF THE STATE.

---

THE IOWA RAILROAD LAND CO., Appellee, v. MARY FEHRING
and FRED MAYER, Appellants.

**Limitation of actions:** WHEN STATUTE COMMENCES TO RUN. Where
a railway company has perfected its title ·to land under a grant and
nothing remains but to receive a certificate from the government,
the statute of limitations will commence to run in favor. of one
claiming an adverse interest at the date such title was perfected,
but in the absence of evidence to the contrary, the company will be
presumed to have acquired title on the date of the certificate, and ·
the statute will run from that time.

**Estoppel:** REPRESENTATIONS OF AGENT. The representations of an
agent as to title, who is authorized simply to sell, will not work
an estoppel where there is no claim that he knew the purpose of

the inquiry, or that his response was to be relied upon, or that the information was given in bad faith.

**Adverse possession:** LACHES: ESTOPPEL. Where one under a quit-claim deed from the supposed owners of the swamp land title, has in good faith entered upon the land, improved and occupied it for a period of ten years, a railway company in fact owning the same but having neglected for more than ten years to procure a patent or assert its rights knowing of the adverse claim and occupancy, is estopped by its laches from thereafter claiming the land.

*Appeal from Greene District Court.*— HON. F. M. POWERS,
·              Judge.

TUESDAY, OCTOBER 25, 1904.

THE plaintiff alleged ownership of the forty acres of land in controversy since June 14, 1901; that defendants are in possession, which they have refused to yield and prayed judgment of ejectment and for damages. An abstract of title was attached, from which it appears that a certificate of title was issued to the Cedar Rapids & Missouri River Railroad Company June 13, 1901, under an act of Congress approved May 15, 1856 (11 Stat. page 9, chapter 28), and an amendment thereto approved June 2, 1864 (13 Stat. page 95, chapter 103), and that prior thereto — December 8, 1884 — that company had conveyed to the plaintiff all the interest it then had or might thereafter acquire.

The defendant Fehring admitted that she declined to yield possession of the land, and in the second division of her answer averred ownership thereof, and that she had been in the open, notorious, and exclusive possession thereof since 1889, had paid the taxes thereon since then, and fenced the land and reduced part of it to cultivation; that such occupancy had been adverse to plaintiff and all others, and with its knowledge and acquiescence. In the third division it is said that one Lawrence was agent for plaintiff for the sale of its lands in Greene county in 1889, and as such sold her the adjoining tract; that upon inquiry he informed her that the

land in controversy did not belong to the company, but was swamp land; and that, relying on this statement, she purchased the title inuring under the swamp-land grant, paying therefor the sum of $160; that she then made valuable improvements thereon, and has since occupied the same — all of which occurred with the knowledge of the plaintiff, and with its acquiescence and consent, by reason whereof it is asserted that plaintiff is estopped from laying claim to the land. She prayed that the cause be transferred to the equity side of the calendar, and that her title be quieted. Her motion to transfer to the equity side of the docket was sustained. The plaintiff then filed a demurrer, the first ground of which was general, and the second ground that the answer, in setting up adverse possession, "in no manner denied that the plaintiff's title from the United States accrued and was acquired at the time set forth in plaintiff's petition within ten years from the commencement of this action." The demurrer was sustained, and the cause sent back to the law side of the calendar. The defendant then amended by adding as a fourth division that since filing her answer she had filed with the General Land Office at Washington, D. C., an application for the cancellation of plaintiff's certificate of title; that she believed the same to have been procured by fraud not discovered by her until 1903, and that she had also assailed certain proceedings before the Land Department. As a fifth division she alleged, in addition to the above, that the proceedings before the Land Department of the government were begun in 1884, and plaintiff allowed the same to remain undisposed of until June 14, 1901.

When official action was taken on the granting of said certificate referred to in plaintiff's petition; and that during all of said time after the 2d day of May, 1889, up to and including the date said certificate was issued, as aforesaid, this defendant was in the actual possession of said real estate, claiming to be the owner thereof under and by virtue of a deed of conveyance, as stated in her original answer

filed in this cause, reference to which is hereby had, and the same is made a part hereof, and permitting this defendant during all of said time to remain in the quiet and undisturbed possession and enjoyment of said premises, and allowing her to make improvements thereon and to pay the taxes levied and assessed against the same, together with any and all other acts which an owner of real estate had and usually exercised with reference thereto; and during all of said time the plaintiff was fully cognizant of the fact that the defendant was so acting, without any knowledge or notice of the proceedings then being carried on in such negligent and slothful manner by the plaintiff; and by reason of said negligence, slothfulness, and laches the plaintiff is now and forever estopped from having, asserting, or pretending to have any claim, demand, right, title, or interest in, to, or concerning any part of the aforesaid real estate.

In the sixth division it is averred that in said proceedings it was claimed that the land was not within the meaning of the swamp-land act, and that it was within the limits of the grant to the railroad company, and defendant alleged that both these contentions were false and fraudulent; that the Land Department in fact found that the land was within the indemnity limits, but that the hearing and finding was without notice to this defendant, and therefore was unauthorized. She again prayed that the cause be heard as an equitable action, and title quieted in her. The defendant Meyer averred that he was in possession as tenant of Fehring, and adopted her answer, as amended, as his own. To the answer, as amended, the plaintiff interposed a general demurrer, which was sustained, and judgment of ejectment entered for a stipulated amount of damages. The defendants appeal.— *Reversed.*

*Owen Lovejoy* and *J. A. Henderson,* for appellant.

*Chas. A. Clark* and *Son* and *Wm. G. Clark,* for appellee.

LADD, J.— According to the petition the plaintiff acquired title to the forty acres through a conveyance executed

to it December 18, 1884, by the Cedar Rapids & Missouri

**1. LIMITATION OF ACTIONS: when statute commences to run.** Railroad Company, to which the government certified the land June 14, 1901, by virtue of an act of Congress approved May 15, 1856, and an amendment thereto approved June 2, 1864. Action for possession was begun in September, 1902, against Mary Fehring, to whom James Callanan and J. C. Savery had executed a quitclaim deed in 1889. To her grantors the American Emigrant Company had conveyed in 1875, and to it Greene county twelve years previous. Meyer is merely the tenant of Fehring, who has been in the open, notorious, and exclusive possession of the land since 1889. This was with color of title. *Tremaine v. Weatherby,* 58 Iowa, 615. As will be observed, the legal title did not pass from the United States until the execution of the certificate to the railroad company in 1901, and it is elementary that the statute of limitations does not run against the government. *Young v. Charnquist,* 114 Iowa, 116; *Wilber v. Ry. Co.,* 116 Iowa, 65. Possibly the company may have earned the land prior to that time; and if its title was perfect, and nothing remained for it to do save receive the certificate of title from the government, it is not perceived why the statute of limitations should not begin to run when entitled to such certificate. See *Cady v. Eighmey,* 54 Iowa, 615; *Steele v. Boley,* 6 Utah, 308 (22 Pac. Rep. 311); *Carroll v. Patrick,* 23 Neb. 834 (37 N. W. Rep. 671); *Nichols v. Council,* 51 Ark. 26 (9 S. W. Rep. 305, 14 Am. St. Rep. 20). In such a case the government retains but the naked legal title, while the beneficiary of the grant is the real owner. But nothing of the kind is suggested in the division of the answer setting up the plea of adverse possession, and in the absence thereof the ownership must be presumed to have been acquired with the execution of the certificate. The averment of the petition that the plaintiff procured the title in 1901 was in no way obviated, and as prior thereto it was in the government, the statute of limitations could not

have begun to run until then, and the demurrer to this division of the answer was rightly sustained.

II. The defendant also pleaded by way of estoppel that in negotiating for an adjoining forty acres of land of plaintiff through its agent, one Lawrence, she inquired who

2. Estoppel: representations of agent.

owned the forty acres in controversy, and was informed by him that it did not belong to the plaintiff, but was swamp land. In reliance on such information she purchased it of Callanan and Savery at a cost of $160. The only averment with reference to the agent's authority contained in the answer is that he " was agent for the sale of their lands in Greene county, Iowa." From the mere agency to sell power to waive claim of title is not to be inferred, and the most that he was authorized to say was that he had not been directed to sell. Besides, there is no allegation that the agent was advised of the purpose of the inquiry, or that plaintiff was intending or likely to rely upon his response, or that this was made in bad faith. In these circumstances the reply cannot be made the basis of a plea in estoppel. *Kirchman v. Standard Coal Co.*, 112 Iowa, 668; *Near v. Green*, 113 Iowa, 647.

III. In the fifth division, added by way of amendment to the petition, the defendant averred that proceedings were instituted before the Land Department of the govern-

3. Adverse possession: laches; estoppel.

ment in 1884 to determine whether the land in controversy was of such character as to pass under the swamp-land grant, and whether it was within the railroad grant; that in 1886 it was held to be within the latter grant, and not to be " swampy; " that the decision was procured by fraud, and that she had applied to the Land Department to have it set aside; that, in any event, the plaintiff allowed the proceedings to remain undisposed of and without attention on its part or on the part of the government from that time until June 14, 1901; that from 1889 the defendant had been in the actual possession of said land, claiming ownership thereof, improving

the same, and paying taxes thereon, without knowledge or notice of said proceedings, and that all of them were known to the plaintiff. It is averred that "by reason of said negligence, slothfulness, and laches" the plaintiff is now estopped from claiming said land. We think this presents a good defense.

One person ought not to take advantage of another's ignorance in the manner alleged. According to the answer, for more than ten years the plaintiff has known that defendant was in possession and asserting title to the land; that during that time she had been improving the same, and so acting in utter ignorance of its claim, or of the proceedings instituted by it to procure title; and yet it had made no objection thereto, and had put forth no effort whatever to perfect its claim to the land. The case in its facts is stronger than *Bullis v. Noble,* 36 Iowa, 618, in that the defendant was conscious of its claim; but possibly weaker in that it had no legal title to assert. But, if the allegations are to be accepted as true, as they must be on demurrer, its omission to acquire title was due to its own inattention to and neglect of its affairs. If nothing had been done in the intervening twelve years, its claim of title was as complete in 1889 as immediately before the certificate issued. In other words, it must have been the real owner, though the naked title continued in the government. We see no reason why the doctrine of estoppel should not apply in such a situation as effectually as where the legal title had passed. If the plaintiff, as the real owner, permitted the improvements under claim of right without objection on its part, though having full information of the claim and what was being done, it ought not now to be permitted to take a position inconsistent to its former attitude to the defendant's prejudice. True, the defendant charged that the decision of the Land Department was procured by fraud, but this does not affect the applicability of the doctrine of estoppel, for, if the circumstances were such as to prohibit the assertion of a

valid title, one ought not in a like situation to be allowed to take advantage of a claim based on fraud. In view of our conclusion, we need not inquire whether the plea of laches was sufficient. But see *Young v. Hanson,* 95 Iowa, 717; *Bourne v. Ragan,* 96 Iowa, 566; *Young v. Snell,* 115 Iowa, 32; *Young v. Charnquist,* 114 Iowa, 116.— *Reversed.*